**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DARRYL LUNON**                                                                      **PLAINTIFF**

**v.**                              **Case No. 4:14-cv-743 KGB**

**UNIVERSITY OF ARKANSAS,** *et al*.                                     **DEFENDANTS**

### OPINION AND ORDER

Before the Court is a motion for summary judgment filed by defendants Kimberly Finne, Paula White, and the University of Arkansas (Dkt. No. 37). Also before the Court is defendants' partial motion to strike plaintiff Darryl Lunon's amended complaint (Dkt. No. 34). Mr. Lunon has responded to defendants' motion for summary judgment, and defendants replied to Mr. Lunon's response (Dkt. Nos. 48; 51). Mr. Lunon did not file a response to defendants' partial motion to strike his amended complaint.

Mr. Lunon originally filed suit against Ms. Finne and Ms. White, as well as the University of Arkansas for Medical Sciences ("UAMS"), Claude Barnes, and Susan Leon on May 24, 2013. *See Lunon v. University of Arkansas for Medical Sciences et al.¸* No. 4:13-cv-00316 (E.D. Ark. filed May 24, 2013). After voluntarily dismissing his first action, Mr. Lunon refiled this action against Ms. Finne, Ms. White, Mr. Barnes, Ms. Leon, and the University of Arkansas on December 17, 2014 (Dkt. No. 1, at 1). Ms. Finne and the University of Arkansas filed a motion to dismiss Mr. Lunon's complaint on January 9, 2015 (Dkt. No. 3). On January 21, 2015, Ms. Leon and Ms. White filed a separate motion to dismiss (Dkt. No. 6). The Court granted in part and denied in part defendants' motions and provided the parties with the opportunity to submit additional briefing on certain claims and defenses (Dkt. No. 15, at 21-22).

In response to the Court's Order, Ms. Finne, Ms. White, Mr. Barnes, Ms. Leon, and the University of Arkansas filed a second motion to dismiss (Dkt. No. 20). The Court granted in part and denied in part defendants' second motion to dismiss (Dkt. No. 30). As a result of these Orders, the Court dismissed all of Mr. Lunon's claims against Ms. Leon and Mr. Barnes (Dkt. No. 15, at 21; Dkt. No. 30, at 14). The Court found that the only claims from Mr. Lunon's original complaint that remained pending were:

1.      An equal protection claim alleging racial discrimination under 42 U.S.C. § 1983;

2.      A claim under the Due Process Clause of the Fourteenth Amendment;

3.      A claim for the tort of outrage under Arkansas law against Ms. Finne; and

4.      Claims under the Arkansas Civil Rights Act ("ACRA").

(Dkt. No. 30, at 14-15).

On July 26, 2016, Mr. Lunon moved to amend his complaint to include new claims against the defendants in this action based on acts and omissions that allegedly occurred in October and November 2015, after Mr. Lunon filed the present action (Dkt. No. 26, at 1). The Court granted in part and denied in part Mr. Lunon's motion to amend his complaint (Dkt. No. 31). The Court permitted "Mr. Lunon to amend his complaint to include race and gender wage discrimination claims under Title VII, 42 U.S.C. § 1983, and the Fourteenth Amendment" (*Id.*, at 10). The Court did not permit Mr. Lunon "to amend his complaint to include his other proposed claims, as . . . such amendments would be futile" (*Id.*).

While the Court granted in part Mr. Lunon's motion to amend his complaint, the Court recognized that "Mr. Lunon's proposed amended complaint, which [was] docketed separately from his motion to amend his complaint, [did] not comply with Local Rule 5.5(e) because it does not reproduce the entire pleading as amended" (*Id.*, at 11). The Court ordered Mr. Lunon "to file an

2

amended complaint that complies with Local Rule 5.5" and stipulated that his "amended complaint must not include parties or claims that have already been dismissed from this action" (*Id.*). The Court also directed Mr. Lunon "to identify in his amended complaint from which specific defendants he is seeking relief for each of his claims" (*Id.*, at 12). After Mr. Lunon filed his amended complaint (Dkt. No. 32), the University of Arkansas, Ms. Finne, and Ms. White filed a partial motion to strike, arguing that Mr. Lunon's "amended complaint does not comply with the Court's order in that the claims against Claude Barnes that were previously dismissed have not been removed, and [Mr. Lunon] did not identify the relief he seeks from each defendant for each claim" (Dkt. No. 34, ¶ 3). In their motion for summary judgment, the University of Arkansas, Ms. Finne, and Ms. White state that if the Court grants their motion for summary judgment, their partial motion to strike will be moot (Dkt. No. 38, at 2).

For the following reasons, the Court grants defendants' motion for summary judgment (Dkt. No. 37). The Court denies defendants' motion to strike as moot (Dkt. No. 34). The Court notes that it permitted Mr. Lunon to amend his complaint to include specific, limited claims (Dkt. No. 31, at 10). To the extent that Mr. Lunon included additional claims in his amended complaint, he did so in violation of Federal Rule of Civil Procedure 15(a)(2), which provides that, when a party is not permitted to amend a pleading as a matter of course, the party "may amend its pleading only with the opposing party's written consent or the court's leave."

## I.    Background

The following facts are taken from Mr. Lunon's response to defendants' statement of material undisputed facts, unless otherwise indicated (Dkt. No. 50).

### A.    Facts Related To Claims Made In The Original Complaint

Mr. Lunon began working for UAMS in 2000. In 2007, Mr. Lunon accepted a human resources ("HR") position in the Faculty Group Practice ("FGP"), a department within the College of Medicine ("COM") at UAMS. "In March 2010, [Mr.] Lunon's supervisor Steve Wood, requested that [Mr.] Lunon be reclassified from an HR Department Administrator to a Project Director (state title) with the functional UAMS title of Assistant Director" (*Id.*, at 2). Mr. Lunon was reclassified as a Project Director in March of 2010 based on Mr. Wood's request, though his salary was not changed at that time. However, on "February 18, 2011, [Mr.] Wood's last day at UAMS, he requested an out-of-cycle increase in [Mr.] Lunon's salary from $50,306.00 to $54,330.00" (*Id.*).

When Mr. Wood requested an increase in Mr. Lunon's salary, Ms. Finne was serving as the Director of Recruitment, Compensation and Classification. In that role, Ms. Finne "oversaw the recruiting and hiring process on campus and oversaw the determination of titles, job descriptions and compensation associated with those jobs" (*Id.*, at 3). Ms. Finne was also responsible for "ensuring that the individuals throughout the UAMS campus in HR were classified appropriately for the roles that they were performing" (*Id.*). In 2011, when Mr. Wood requested Mr. Lunon's raise:

> HR on the UAMS campus was decentralized meaning that in the many departments and divisions of the institution, there were HR managers, specialists and generalists performing the various HR tasks for their particular area. There was also a campus-wide Office of HR ("OHR") that provided oversight and support to the various decentralized components on campus.

(*Id.*, at 3). As "[m]any of the OHR positions provided services to a greater number of employees[,]" Ms. Finne was supposed:

> [T]o be contacted when HR positions on campus were reclassified so that she could
> ensure that department or division level HR positions were not classified higher
> than OHR positions unless the department or division level positions were in fact
> performing greater responsibilities to justify a higher classification.

(*Id.*, at 4).  Contrary to this general policy, Ms. Finne was not informed of Mr. Lunon's 2010

reclassification until Mr. Wood requested Mr. Lunon's raise in 2011.

When the Office of Human Resources received Mr. Wood's requested salary increase for

Mr. Lunon, Patricia Cavenor, a HR Consultant in Recruitment, Classification and Compensation,

expressed concerns to Ms. Finne that the request was out-of-cycle.  Stephanie Blanchett, the

Manager of Recruitment, Classification and Compensation, also raised questions about Mr.

Lunon's increase in salary.[1]  Ms. Finne "informed [Ms.] Cavenor and [Ms.] Blanchett that the

requested increase fell within the guidelines, and she took no further action" (*Id.*, at 3).  Ms. Finne

"did not attempt to change the reclassification [of Mr. Lunon's position,] but expressed concerns

that it happened outside of the normal process" (*Id.*, at 4).

In March 2011, Olan Nugent, an Executive Associate Dean and Chief Operating Officer

of FGP, asked Ms. Finne and Wendy Backus, a HR Divisional Administrator for the COM,

whether the reclassification of Mr. Lunon's position was appropriate.  Mr. Nugent sent Mr.

Lunon's Position Classification Questionnaire ("PCQ") to Ms. Finne and Ms. Backus, and he

asked their opinions on Mr. Lunon's classification and salary.  In response, Ms. Finne told Mr.

---

[1] In his response to defendants' statement of material undisputed facts, Mr. Lunon attempts
to dispute this statement, claiming that "Blanchette [sic] later admitted to plaintiff that it was Finne
and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order
to reverse his promotion" (Dkt. No. 50, at 3).  His objection does not go to the substance of the
statement that he attempts to argue is disputed, which is that "[o]n February 22, 2011, Stephanie
Blanchett, the Manager of Recruitment, Classification and Compensation, raised questions about
Lunon's increase" (*Id.*).  Therefore, the Court finds that this fact is undisputed.  *See* Fed. R. Civ.
P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by
Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

Nugent, Ms. Blanchett, and Hosea Long, the Associate Vice Chancellor and Chief Human Resources Officer, that "there were concerns that the classification was not appropriate based on [Mr.] Lunon's duties and position in the overall structure of HR in the FGP" (*Id.*, at 5). "Following [Mr.] Nugent's inquiry, [Ms.] Finne took no further action regarding [Mr.] Lunon's classification" (*Id.*).[2]

"In the spring of 2011, [Mr.] Nugent requested that [Mr.] Lunon review the classification of all positions in the FGP" (*Id.*). Mr. Nugent directed Mr. Lunon "to ensure that the PCQ for each position [within the FGP] was up-to-date, work with the appropriate managers or directors to ensure that the PCQ job duties were being performed at each position, and [to] recommend any necessary changes" (*Id.*, at 6). Ms. Backus was assigned to work on the project with Mr. Lunon. Mr. Nugent stated that no employee would experience a decrease in salary resulting from the classification review project.

A few months after Mr. Lunon began working on the classification review project, Ms. White became the Assistant Dean of Clinical Finance in the Dean's Office of the COM. Ms. White did not initiate the classification review, but as Assistant Dean, she "became Lunon's direct supervisor and took over the task of directing the classification review to completion" (*Id.*).[3] Ms. White instructed Ms. Backus to conduct the classification review for Mr. Lunon's position and for

---

[2] Mr. Lunon does not dispute this fact, though he states that Ms. Finne "instructed others to take action against" his reclassification (Dkt. No. 550, at 5).

[3] Mr. Lunon attempts to dispute this statement, claiming that "Blanchette [sic] admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 6). His objection does not go to the substance of the statement that he attempts to argue is disputed, which is that "White became Lunon's direct supervisor and took over the task of directing the classification review to completion" (*Id.*). Therefore, the Court finds that this fact is undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

his two staff members.[4]  Ms. Backus "reviewed the FGP HR positions using the same methodology that she and Lunon had been using on the other FGP positions" (*Id.*, at 7).[5]  After completing her "paper review" of Mr. Lunon's position, Ms. Backus concluded that, based on his job duties, Mr. Lunon was misclassified as a Level 13 rather than a Level 11, and his state title should be Project Manager instead of Project Director.[6]

Mr. Lunon disagreed with Mr. Backus's conclusion in her paper review that he was misclassified, so Ms. White "asked [Mr.] Lunon to verify his PCQ, discussed the prior reclassification with him, and spoke to [Ms.] Leon and [Mr.] Nugent about the reclassification and [Mr.] Lunon's job duties" (*Id.*, at 9).[7]  Ms. White then consulted with Ms. Finne on how to proceed. Mr. Finne had not been involved in the classification review of the positions within the FGP before Ms. White contacted her regarding Mr. Lunon's classification.  Ms. Finne suggested that the

---

[4]  While Mr. Lunon objects to the asserted reasoning for why Ms. White assigned Ms. Backus to review the classification of his position and the positions of his staff, he does not appear to dispute that Ms. White actually assigned that duty to Ms. Backus (Dkt. No. 50, at 6-7).

[5]  Mr. Lunon attempts to dispute this statement, claiming that "Blanchette [sic] admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 7).  His objection does not go to the substance of the statement that he attempts to argue is disputed, which is that Ms. "Backus reviewed the FGP HR positions using the same methodology that she and Lunon had been using on the other FGP positions" (*Id.*).  Therefore, the Court finds that this fact is undisputed.  *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

[6]  Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 7).  He does not dispute that Ms. Backus concluded that he was misclassified as a Level 13 with a state title of Project Director. The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[7]  Mr. Lunon attempts to dispute these facts by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 9).  He does not dispute that Ms. White asked Mr. Lunon to verify his PCQ, discussed the prior reclassification with him, and spoke to Ms. Leon and Mr. Nugent about the reclassification and Mr. Lunon's job duties.  The Court considers these facts undisputed pursuant to Fed. R. Civ. P. 56(e).

department conduct a desk audit for Mr. Lunon's position and for his two staff members, as a desk audit "would allow the auditor not only [to] review the paper information but to also discuss job duties with Lunon and his supervisor and to observe him performing his job" (*Id.*).[8] "A desk audit was within the course and scope of [Ms.] Finne's official position with UAMS as a Director of Classification" (*Id.*, at 10).[9]

Ms. White accepted Ms. Finne's recommendation, "and a desk audit was performed on [Mr.] Lunon's position by [Ms.] Blanchett, an African-American female, and [Ms.] Backus because of her involvement in the paper review" (*Id.*).[10] Mr. Lunon's position, and the positions of his two staff members, were the only positions in the FGP that were subjected to a desk audit during the classification review. No other FGP staff members complained about the results of the paper review of their positions.[11] "Had others disagreed with or objected to the results of the paper

---

[8] Mr. Lunon attempts to dispute these facts by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 9). He does not dispute that Ms. Finne suggested that a desk audit be conducted for the three positions, including Mr. Lunon's, that the paper review concluded were misclassified. The Court considers these facts undisputed pursuant to Fed. R. Civ. P. 56(e).

[9] Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 10). He does not dispute that "[a] desk audit was within the course and scope of [Ms.] Finne's official position with UAMS as a Director of Classification" (*Id.*). The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[10] Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 10). He does not dispute that "a desk audit was performed on [Mr.] Lunon's position by [Ms.] Blanchett, an African-American female, and [Ms.] Backus because of her involvement in the paper review" (*Id.*). The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[11] Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion; further, while the unit audit resulted in plaintiff's demotion, it resulted in promotions and wage increases for similarly situated white and female employees" (Dkt. No. 50, at 11). He does not dispute that "no one else complained of the results

review of their positions, . . . [Ms.] White would have requested additional desk audits" (*Id.*, at 11).[12]  Mr. "Lunon never recommended that desk audits be conducted on every position in FGP" (*Id.*, at 16).

After conducting the desk audit, Ms. Blanchett concluded that Mr. Lunon should be reclassified at Level 10, which was one level lower than the reclassification suggested by the paper review.[13]  After the completion of the paper review and desk audit, Ms. Finne recommended to Ms. White that Mr. Lunon be reclassified as a Department Manager at a Level 11.[14]  Ms. White and Ms. Leon, Ms. White's supervisor, accepted Ms. Finne's recommendation and reclassified Mr. Lunon as a Department Manager at a Level 11.[15]  Despite being reclassified as a Department

_____

of the paper review" (*Id.*).  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[12]    Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion; further, while the unit audit resulted in plaintiff's demotion, it resulted in promotions and wage increases for similarly situated white and female employees" (Dkt. No. 50, at 12).  He does not dispute that "[h]ad others disagreed with or objected to the results of the paper review of their positions, . . . [Ms.] White would have requested additional desk audits" (*Id.*, at 11).  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[13]    Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion; further, while the unit audit resulted in plaintiff's demotion, it resulted in promotions and wage increases for similarly situated white and female employees" (Dkt. No. 50, at 12).  He does not dispute that the conclusion of the desk audit was that he should be reclassified as a Level 10.  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[14]    Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion; further, while the unit audit resulted in plaintiff's demotion, it resulted in promotions and wage increases for similarly situated white and female employees" (Dkt. No. 50, at 12-13).  He does not dispute that Ms. Finne recommended that he be reclassified as a Level 11 after the paper review and desk audit were completed.  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[15]    Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion; further, while the unit audit resulted in plaintiff's

Manager at a Level 11, Mr. "Lunon's UAMS functional title of Assistant Director did not change, and his job duties, salary and benefits did not change" (*Id.*, at 13).[16]  Furthermore, his "salary range under the reclassification still had a lot of room to grow so there was no negative impact on his future salary increases" (*Id.*).[17]  The UAMS staff handbook provides that "[e]mployment with the University of Arkansas System is governed by an employment-at-will doctrine and [s]taff employees may be terminated at any time or be dismissed for cause under University procedures" (*Id.*, at 21) (internal quotation marks omitted).

### B.     Facts Related To New Claims Made In The Amended Complaint

"UAMS is composed of divisions and within those divisions are departments" (*Id.*, at 16). From 2002 to 2015, HR services at UAMS "were decentralized with HR individuals in divisions and departments who reported to individuals within the division or department but not necessarily to the central OHR" (*Id.*).  In 2014, UAMS began "the process of centralizing HR services across the campus" such that, "once HR services were centralized, the reporting structure changed with all HR positions being aligned and brought under the umbrella of OHR where core campus HR

---

demotion, it resulted in promotions and wage increases for similarly situated white and female employees" (Dkt. No. 50, at 13).  He does not dispute that Ms. White and Ms. Leon reclassified him as a Department Manager at Level 11 after Ms. Finne made her recommendation.  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[16]  Mr. Lunon attempts to dispute this fact by stating that "Blanchette [sic] later admitted to plaintiff that it was Finne and White who were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (Dkt. No. 50, at 13).  He does not dispute that, despite being reclassified from a Level 13 to a Level 11, his "UAMS functional title of Assistant Director did not change, and his job duties, salary and benefits did not change" (*Id.*).  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

[17]  Mr. Lunon attempts to dispute this fact by stating that it is false because "defendants themselves allege that plaintiff's job position was reduced from a level 11 to a level 10" (Dkt. No. 50, at 13).  His objection does not go to the substance of the statement that he attempts to argue is disputed, which is that, Mr. "Lunon's salary range under the reclassification still had a lot of room to grow so there was no negative impact on his future salary increases" (*Id.*).  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

functions were managed" (*Id.*, at 17) (internal quotation marks omitted). "During the transition to

a centralized structure, [Mr.] Lunon directly reported to Kathleen McComber, then Assistant Vice

Chancellor for HR[,]" who "assigned [Mr.] Lunon to provide HR services as the HR Manager to

the Integrated Revenue Cycle ('IRC') which was overseen by Paula White" (*Id.*, at 17-18).[18]  Ms.

"White did not request that [Mr.] Lunon be assigned to her group[;] . . . [Ms.] McComber made

the decision to assign [Mr.] Lunon to the IRC based on his previous experience in servicing the

FGP[,] which was now within the IRC" (*Id.*, at 18).[19]  "Once [Mr.] Lunon transitioned to OHR in

or around December 2014, [Ms.] White was no longer involved in any employment decisions,

including salary decisions, regarding [Mr.] Lunon" (*Id.*, at 20).[20]

On September 1, 2015, Jason Rawn began working as the HR Director of the Integrated

Clinical Enterprise ("ICE").  As HR Director for ICE, Mr. Rawn was Mr. Lunon's direct

supervisor.  On April 18, 2016, Mr. Lunon filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC") "alleging that 'white, female, similarly situated

HR Managers' in the same department received greater percentage increases" in salary than he did

---

[18]  Mr. Lunon claims that during the transition to a centralized structure, he "reported to numerous supervisors and had job duties and literally hundreds of clients across numerous agencies" (Dkt. No. 50, at 17).  He does not dispute that he reported to Ms. McComber and that Ms. McComber assigned him to provide HR services to the IRC.

[19]  Mr. Lunon claims that during the transition to a centralized structure, he "reported to numerous supervisors and had job duties and literally hundreds of clients across numerous agencies" (Dkt. No. 50, at 18).  He does not dispute that Ms. White did not request that he be assigned to her group or question Ms. McComber's stated reasoning for assigning him to provide HR services to the IRC.

[20]  Mr. Lunon attempts to dispute this fact by stating that during the transition to a centralized structure, he "reported to numerous supervisors and had job duties and literally hundreds of clients across numerous agencies" (Dkt. No. 50, at 20).   His objection does not go to the substance of the statement that he attempts to argue is disputed, which is that, "[o]nce [Mr.] Lunon transitioned to OHR in or around December 2014, [Ms.] White was no longer involved in any employment decisions, including salary decisions, regarding [Mr.] Lunon" (*Id.*).  The Court considers this fact undisputed pursuant to Fed. R. Civ. P. 56(e).

(*Id.*, at 18; Dkt. No. 37-8, at 1).  The HR managers referenced in Mr. Lunon's Charge of Discrimination were Michelle Lax, Susan Garoutte, and Karen Light.  According to Mr. Lunon, while his salary was only increased from $56,000 to $58,000; Ms. Light's salary was increased from $38,000 to $55,000; Ms. Lax's salary was increased from $46,000 to $58,000; and Ms. Garoutte's salary was increased from $44,000 to $55,000 (Dkt. No. 48-1, at 6).  When they received their raises in their salaries, Mr. Lunon, Ms. Lax, Ms. Garoutte, and Ms. Light "were HR Managers of their respective service lines in the same classification and assigned the same job duties" (Dkt. No. 50, at 20).[21]

## II.    Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that

---

[21]    Mr. Lunon does not deny this statement, despite his claim to the contrary.  Instead, without denying the substance of this statement, he contends that he "was wrongfully demoted back down to the comparators' level" (Dkt. No. 50, at 20).

there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.    Discussion

The University of Arkansas, Ms. Finne, and Ms. White move for judgment as a matter of law on all of Mr. Lunon's claims that remain pending (Dkt. No. 38, at 14).

### A.    Remaining Claims From Original Complaint

#### 1.    Racial Discrimination Under The Equal Protection Clause And The ACRA

Mr. Lunon claims that the defendants discriminated against him based on his race in violation of the Equal Protection Clause and the ACRA. The Court will consider these claims together, as these claims are subject to the same discrimination analysis. *See Henry v. Hobbs*, 824 F.3d 735, 738 (8th Cir. 2016) (stating that a racial discrimination claim under the Equal Protection clause is "subject to 'essentially the same' discrimination analysis as Title VII disparate-treatment claims") (quoting *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986)); *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 902 (8th Cir. 2015) (noting that race discrimination claims under Title VII and the ACRA are evaluated identically).

An employment discrimination plaintiff may survive a motion for summary judgment through "proof of 'direct evidence' of discrimination . . . [or] through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011); *see also McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). Direct evidence is evidence "showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated" the adverse employment action. *Id.* (quoting *Griffith v.*

*City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)).  Mr. Lunon does not offer direct evidence of discrimination, and the Court does not find any direct evidence of discrimination in the record. Furthermore, in his response to the defendants' motion for summary judgment, Mr. Lunon limits his argument to the *McDonnell Douglas* analysis (Dkt. No. 49, at 4-5).  Therefore, the Court will proceed with a *McDonnell Douglas* analysis.

The United States Supreme Court's decision in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), established the burden-shifting framework used to analyze employment discrimination claims.  "Under this scheme, a plaintiff first must establish a prima facie case of discrimination . . . ."  *Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998).  If Mr. Lunon establishes a *prima facie* case, then the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for the action.  *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 990 (8th Cir. 2011).  If defendants meet their burden, the burden shifts back to Mr. Lunon to present facts that, if proven at trial, would permit a jury to conclude that defendants' proffered reason was pretext, and that unlawful discrimination was the true reason for the adverse employment action. *Id.*  Mr. Lunon, as the plaintiff, "has the burden of persuasion at all times."  *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 955 (8th Cir. 2012) (citing *Pope v. ESA Servs., Inc.,* 406 F.3d 1001, 1007 (8th Cir. 2005)).

In its Order granting in part and denying in part defendants' motions to dismiss Mr. Lunon's original complaint, the Court provided the following description of Mr. Lunon's racial discrimination claims:

Mr. Lunon alleges that defendants ordered and conducted a desk audit that was "discriminatory and malicious and resulted in Plaintiff and his staff being demoted" (Dkt. No. 1, ¶ 8). A demotion constitutes an adverse employment action if it causes "a significant change in working conditions or a diminution in [] title, salary, or benefits." *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1056 (8th Cir. 2007). At this stage, Mr. Lunon's claims—that he was demoted, subjected to increased scrutiny and criticism, denied his ability to hire a staff member, and required to perform responsibilities not in his job description—sufficiently allege that he suffered an adverse employment action.

Furthermore, Mr. Lunon states that, "[d]espite the fact that white employees situated in similar Departments had the classification to which Plaintiff and his staff had been promoted, only Plaintiff's Department was subjected to this desk audit" (Dkt. No. 1, ¶ 8). Although Mr. Lunon does not name any individual similarly situated employee by name, his . . . referencing of Caucasian employees who are in similar departments as Mr. Lunon and who held the same classification as Mr. Lunon gives defendants fair notice of Mr. Lunon's claim and the grounds for the claim.

(Dkt. No. 15, at 11-12). To establish a *prima facie* case of discrimination, Mr. Lunon has the burden of showing "that he was a member of a protected class, that he met [his employer's] legitimate employment expectations, that he suffered an adverse employment action, and that the circumstances give rise to an inference of discrimination based on race . . . ." *Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 773 (8th Cir. 2016). In his response to defendants' motion for summary judgment, Mr. Lunon's limited analysis focuses exclusively on whether defendants' asserted nondiscriminatory reasons were pretext (Dkt. No. 49, at 4-5). However, he does state, and the defendants do not appear to dispute, that Mr. Lunon was meeting his employer's legitimate job expectations when he was subjected to a desk audit that resulted in the reclassification of his position (*Id.*, at 1-2). There is also no dispute that Mr. Lunon, an African American, is a member of a protected class. Therefore, the Court finds that Mr. Lunon has satisfied his burden of establishing the first two elements of his *prima facie* case.

The University of Arkansas, Ms. Finne, and Ms. White argue that Mr. Lunon does not meet his burden of establishing the third and fourth elements of his *prima facie* case (Dkt. No. 38, at

18).  Mr. Lunon provides no legal analysis on these issues; it appears that he assumes that he has presented a *prima facie* case of race discrimination (Dkt. No. 49, at 4-5).  However, regarding the adverse employment action element of his *prima facie* case, he essentially argues that he suffered an adverse employment action because Ms. Finne and Ms. White conspired to force him to participate in a rigged desk audit that resulted in his demotion (*Id.*, at 3).  He also claims that after his demotion:

> [Ms.] Finne and [Ms.] White continued to create a hostile atmosphere for him and treated him differently, more dismissively, [than] similarly situated white and female employees, including particularly, increasing his work load excessively, demanding that he perform his tasks in the same manner and time frame in spite of the voluminous increase in his case load, and repeatedly denying his requests for administrative support or assistance, while routinely providing such assistance and support to the others.

(*Id.*, at 4).

The Court finds that Mr. Lunon's vague allegations of a hostile atmosphere, increased workload, and denial of administrative support do not constitute adverse employment actions, as "'[m]inor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not' rise to the level of an adverse employment action."  *Clegg v. Arkansas Dep't of Correction*, 496 F.3d 922, 926 (8th Cir. 2007) (quoting *Higgins v. Gonzales,* 481 F.3d 578, 584 (8th Cir. 2007)).  Even if this alleged conduct qualified as an adverse employment action, Mr. Lunon failed to show that the circumstances surrounding this alleged conduct give rise to an inference of discrimination based on race.  He appears to attempt to satisfy that burden by claiming that similarly situated white employees were treated differently (Dkt. No. 49, at 4).  While "a plaintiff can establish an inference of discrimination . . . by showing more-favorable treatment of similarly-situated employees who are not in the protected class[,]" Mr. Lunon's bare allegation that white employees were treated favorably is insufficient to satisfy

the fourth element of his *prima facie* case because he "failed to identify any such employee." *Grant*, 841 F.3d at 774.[22]

Assuming without deciding that Mr. Lunon's reclassification qualifies as an adverse employment action, the Court determines that Mr. Lunon still fails to state a *prima facie* case of discrimination because he fails to show that the circumstances of the reclassification "give rise to an inference of discrimination *based on race*." *Grant*, 841 F.3d at 773 (emphasis added).[23]  Mr. Lunon could attempt to satisfy the fourth element of his *prima facie* case "by showing more-favorable treatment of similarly-situated employees who are not in the protected class, . . . biased comments by a decisionmaker, or . . . pretext with evidence that an employer failed to follow its

---

[22] In his response to defendants' statement of undisputed facts, Mr. Lunon identifies Ms. Lax, Ms. Garoutte, and Ms. Light as comparators (Dkt. No. 50, at 19).  However, the information pertaining to Ms. Lax, Ms. Garoutte, and Ms. Light in the record relates solely to the new claims raised in Mr. Lunon's amended complaint (*Id.*, at 19-20).  Mr. Lunon makes no attempt to identify Ms. Lax, Ms. Garoutte, and Ms. Light as comparators for the purposes of his claims arising out of the desk audit and his reclassification, which occurred in 2011.

[23] A reassignment or reclassification can qualify as an adverse employment action, but not necessarily so.  In this case, it is undisputed that Mr. Lunon's reclassification did not result in a change to his job duties, salary, benefits, and functional title of Assistant Director (Dkt. No. 50, at 13).  These undisputed facts weigh against finding that Mr. Lunon's reclassification qualifies as an adverse employment action.  *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) (finding that the plaintiff did not suffer an adverse employment action where "[s]he was reassigned but suffered no diminution in her title, salary, or benefits[,]" and the changes in duties or working conditions that came with her reassignment caused no materially significant disadvantage).  However, there is no dispute that after the desk audit, Mr. Lunon was reclassified from a Level 13 employee to a Level 11 and his state title was changed from Project Director to Department Manager.  While Mr. Lunon's salary range as a Level 11 employee allowed for future increases in salary (Dkt. No. 50, at 13), the defendants admit that, subsequent to his reclassification, when Mr. Lunon received a lower percentage raise than other HR managers in his department, the justification was that he was "already at the higher end of this salary range and was increased to the maximum amount allowed within the range" (*Id.*, at 19-20).  These undisputed facts weigh in favor of finding that Mr. Lunon's reclassification qualifies as an adverse employment action, as the impact that a reassignment has on "future promotions or salary increases is . . . relevant" to determining whether an employee suffered an adverse employment action.  *Bonenberger v. St. Louis Metro. Police Dep't*, 810 F.3d 1103, 1108 (8th Cir. 2016).

own policies or shifted its explanation of the employment decision." *Id.* (internal citations omitted).

While he fails to articulate any argument on this point in his response to the defendants' motion for summary judgment, the Court understands that Mr. Lunon may believe that he has satisfied the fourth element of his *prima facie* case by stating repeatedly that Ms. Blanchett admitted to him that Ms. Finne and Ms. White "were fixated on plaintiff's promotion and clandestinely 'fixed' his audit in order to reverse his promotion; further, while the unit audit resulted in [his] demotion, it resulted in promotions and wage increases for similarly situated white and female employees" (Dkt. No. 50, at 10-13). This explanation fails. First, Mr. Lunon fails to identify any specific white employee who received favorable treatment and who satisfies the requirements to be a comparator. *See Grant*, 841 F.3d at 774 ("To establish that a similarly situated employee not in his protected class was treated more favorably, Grant was first required to identify an employee who was 'similarly situated in all relevant respects.' Grant failed to identify any such employee."). Second, while he claims that Ms. Blanchett told him that Ms. Finne and Ms. White "were fixated on [his] promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (*Id.*), Mr. Lunon offers no record evidence giving any indication that Ms. Finne and Ms. White sought to reclassify his position *because of his race*. In fact, Mr. Lunon appears to imply that Ms. Finne was motivated to reverse his promotion for reasons unrelated to his race (Dkt. No. 49, at 3) ("Prior to the events leading to [Mr.] Lunon's audit, he and [Ms.] Finne had experienced negative interactions, when [Mr.] Lunon had been appointed to a work committee that removed her position, and when [Mr.] Lunon had separately, openly questioned the manner in which [Ms.] Finne had been promoted to be a Director in the department"). Therefore, Mr. Lunon fails to establish a *prima facie* claim of race discrimination.

Even if Mr. Lunon were able to make a *prima facie* case of race discrimination, defendants would be entitled to summary judgment. Defendants offer a legitimate, non-discriminatory reason for their decision to subject Mr. Lunon to a desk audit and to reclassify his position: Mr. "Lunon was the only person to complain to [Ms.] White about the results of the paper review and both the paper review and desk audit showed that [Mr.] Lunon was misclassified" (Dkt. No. 38, at 21). Therefore, under *McDonnel Douglas*, the burden shifts back to Mr. Lunon to demonstrate that this reason was pretext for race discrimination. *Tyler*, 628 F.3d at 990.

"'A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.'" *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125–26 (8th Cir. 2017) (quoting *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015)). In his response to defendants' motion for summary judgment, Mr. Lunon argues that:

> All of the credible facts in the record of this case undermine defendants' claim that they had a legitimate business purpose for demoting and otherwise denying reasonable administrative assistance to Lunon; particularly so, where defendants were routinely providing that same assistance to similarly situated white and female employees.

(Dkt. No. 49, at 5). Therefore, he attempts to show pretext through comparators. "'At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards*, 860 F.3d at 1126 (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (en banc)). Mr. Lunon must establish that his proposed comparators are "'similarly situated in all relevant respects[,]'" meaning the comparators "'must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same

19

conduct without any mitigating or distinguishing circumstances.'" *Id.* (quoting *Johnson*, 769 F.3d at 613).

In this case, Mr. Lunon does not identify any comparators, meaning he does not show how such comparators are similarly situated to him in all relevant respects. Furthermore, while Mr. Lunon and his staff members were the only employees in the FGP who were subjected to a desk audit, it is undisputed that Mr. Lunon was the only person who complained about the results of the paper review of his position. Therefore, the circumstances that lead to Mr. Lunon's desk audit are distinguishable from the circumstances of the other employees of the FGP. The Court finds that Mr. Lunon fails to show how defendants' nondiscriminatory rationale for conducting the desk audit and reclassifying his position was pretext for race discrimination.

Mr. Lunon fails to establish a *prima facie* case of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and the ACRA. Even if he were able to establish a *prima facie* case, defendants offer a legitimate, nondiscriminatory reason for their action, and Mr. Lunon fails to demonstrate that defendants' asserted reason is pretext. Therefore, the Court grants defendants' motion for summary judgment on these claims.

## 2.    Due Process Clause

In its Order granting in part and denying in part defendants' second motion to dismiss, the Court denied defendants' motion to dismiss Mr. Lunon's Fourteenth Amendment Due Process claim because, at that stage of the litigation, "[i]t [wa]s plausible that Mr. Lunon had a property right in his continued employment at his promoted position, meaning that he could not be demoted without receiving due process" (Dkt. No. 30, at 10). Defendants now move for summary judgment on Mr. Lunon's Due Process claim, arguing that the undisputed record evidence demonstrates that

Mr. Lunon "had no protected property interest in continuing his employment at UAMS and he was not deprived of any benefit in his employment" (Dkt. No. 38, at 26).

Mr. Lunon did not address defendants' arguments pertaining to his Due Process claim in his response to their motion for summary judgment. In failing to respond to defendants' motion for summary judgment on his Due Process claim, Mr. Lunon has failed to contest the arguments defendants set forth in their motion. Mr. Lunon has waived any arguments that may have been available to him on this claim. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument.").

The Court finds that defendants are entitled to summary judgment on Mr. Lunon's Due Process claim. [24] Courts look to state law "[t]o determine whether an employee enjoys a protected property interest in continued employment . . . ." *Eddings v. City of Hot Springs, Ark.*, 323 F.3d 596, 601 (8th Cir. 2003) (citing *Bishop v. Wood,* 426 U.S. 341, 344–45 (1976)). "In Arkansas, employment is 'at-will' unless the employment is for a fixed term or unless an employee handbook contains 'an *express provision* against termination except for cause . . . .'" *Id.* (emphasis in original) (quoting *Gladden v. Arkansas Children's Hospital,* 728 S.W.2d 501, 505 (Ark. 1987)); *see also*

---

[24] In their motion for summary judgment, defendants state that the Eighth Circuit Court of Appeals "addressed this very question in the context of employment at UAMS holding that '[plaintiff] did not have a property interest in her employment because employment in Arkansas is at-will and UAMS did not create any expectation of continued employment'" (Dkt. No. 38, at 25) (quoting *Floyd-Gimon v. Univ. of Arkansas for Med. Scis. ex rel. Bd. of Trustees of Univ. of Arkansas*, 716 F.3d 1141, 1146 (8th Cir. 2013)). The Eighth Circuit made no such holding. The defendants omitted the first four words of the sentence quoted above, which were "*[t]he district court determined* [plaintiff] did not have a property interest in her employment . . . ." *Floyd-Gimon*, 716 F.3d at 1146 (emphasis added). The Eighth Circuit found that plaintiff's due process claim failed "because she received all of the process she was due[,]" assuming without deciding that plaintiff had a property interest in her continued employment. *Id.*

*TFS of Gurdon, Inc. v. Hook*, 474 S.W.3d 897, 902 (Ark. App. 2015) (recognizing at-will doctrine in Arkansas). The undisputed record evidence is that the UAMS staff handbook provides that "[e]mployment with the University of Arkansas System is governed by an employment-at-will doctrine and [s]taff employees may be terminated at any time or be dismissed for cause under University procedures" (Dkt. No. 50, at 21) (internal quotation marks omitted). Therefore, Mr. Lunon did not have a property interest in his employment, meaning he does not have any valid claims under the Due Process Clause. *See Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) ("Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated, and the possession of a protected life, liberty, or property interest is a condition precedent to any due process claim. Where no such interest exists, there can be no due process violation." (internal citations omitted)). The Court grants defendants' motion for summary judgment on these claims.

### 3.    Tort Of Outrage

The Court denied defendants' motion to dismiss Mr. Lunon's outrage claim against Ms. Finne, though the Court recognized that Mr. Lunon would have "a heavy burden in establishing that Ms. Finne's conduct was sufficiently outrageous to make her subject to liability under Arkansas law" (Dkt. No. 30, at 14). Ms. Finne now moves for summary judgment on Mr. Lunon's outrage claim (Dkt. No. 38, at 20). Mr. Lunon does not address Ms. Finne's arguments on this claim in his response, meaning he has waived any arguments that may have been available to him on this claim. *Satcher*, 558 F.3d at 735.

Under Arkansas law, a valid claim for the tort of outrage "requires proof that: (1) the defendant intended to inflict emotional distress[;] (2) 'extreme and outrageous' conduct 'beyond all possible bounds of decency[;]' (3) causation[;] and (4) emotional distress 'so severe that no

22

reasonable person could be expected to endure it.'" *Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 478 (8th Cir. 2010) (quoting *Kiersey v. Jeffrey,* 253 S.W.3d 438 (Ark. 2007)). "Arkansas courts take a narrow view of the tort, and adopt an especially strict approach to outrage claims arising from employment relationships." *Id.* (internal citation omitted). The tort of outrage "provides a basis for recovery only for conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious, and to be utterly intolerable in a civilized society." *Patrick v. Tyson Foods, Inc.*, 489 S.W.3d 683, 695 (Ark. App. 2016) (citing *M.B.M. Co. v. Counce,* 596 S.W.2d 681 (Ark. 1980)). Even if true, Mr. Lunon's claim that Ms. Finne conspired to reverse his job classification by conducting a rigged desk audit does not meet this high standard. The Court grants defendants' motion for summary judgment on this claim.

### 4.     Arkansas Civil Rights Act

To the extent that Mr. Lunon brings claims under the ACRA in addition to his race discrimination claim, the Court dismisses them with prejudice. Mr. Lunon does not mention the ACRA in his response to defendants' motion for summary judgment. The only ACRA claims that are discernable in Mr. Lunon's original and amended complaints are for race and gender discrimination. Mr. Lunon's ACRA claim for gender discrimination fails for the same reasons his racial discrimination claim fails: he fails to establish a *prima facie* case of gender discrimination, and even if he did, he fails to demonstrate that defendants' legitimate, nondiscriminatory reason for their actions was pretext for gender discrimination. Therefore, the Court grants defendants' motion for summary judgment on all of Mr. Lunon's remaining ACRA claims.

### B.    Claims Raised In The Amended Complaint

In its Order granting in part and denying in part Mr. Lunon's motion for leave to amend his complaint, the Court permitted "Mr. Lunon to amend his complaint to include race and gender wage discrimination claims under Title VII, 42 U.S.C. § 1983, and the Fourteenth Amendment" (Dkt. No. 31, at 10).  Mr. Lunon sought to amend his complaint to include other claims, but the Court determined that all other claims in Mr. Lunon's proposed amended complaint were futile. Defendants now move for summary judgment on Mr. Lunon's wage discrimination claims.

The Court grants defendants' motion for summary judgment on Mr. Lunon's wage discrimination claims.  To have a valid wage discrimination claim under Title VII and the Equal Protection Clause of the Fourteenth Amendment, Mr. Lunon must demonstrate that employees of a different gender or race were paid more than he was.  *See Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 719 (8th Cir. 2000) ("[T]o establish a prima facie case of wage discrimination [under Title VII] based on unequal pay, a [female] plaintiff must show that the defendant paid male workers more than she was paid for equal work in jobs that required equal skill, effort, and responsibility and were performed under similar conditions."); *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 758 (8th Cir. 2003) ("To establish a prima facie case of gender discrimination [under the Equal Protection Clause] based on disparate pay, Ottman must establish she occupied an employment position similar to that of higher-paid males.").[25]  In his motion to amend his complaint, Mr. Lunon alleged that he was the victim of wage discrimination because the

---

[25]    The Court notes that "[t]he Eighth Circuit has held that Equal Pay Act, 29 U.S.C. § 206(d) (1994), standards apply to Title VII claims of 'unequal pay for equal work.'"  *Buettner*, 216 F.3d at 718–19 (quoting *McKee v. Bi–State Dev. Agency*, 801 F.2d 1014, 1018 (8th Cir. 1986)). The Equal Pay Act provides that "[n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work . . . ."  29 U.S.C. § 206(d)(1).

24

defendants paid him "less compensation than was provided to similarly situated, white and female employees" (Dkt. No. 26, at 1).  In his response to defendants' statement of undisputed facts, Mr. Lunon identifies Ms. Lax, Ms. Garoutte, and Ms. Light as these employees (Dkt. No. 50, at 19).  However, in his own affidavit submitted in support of his response to defendants' motion for summary judgment, Mr. Lunon states that he was paid more than Ms. Light and Ms. Garoutte and that he was paid the same amount as Ms. Lax (Dkt. No. 48-1, at 6).  Therefore, on these record facts, he does not have a valid claim for race or gender wage discrimination.

Mr. Lunon repeatedly contends that "[p]ay records reflect that the comparators, who were junior in tenure and less experienced than plaintiff, benefitted from their audits while plaintiff was harmed by his." (Dkt. No. 50, ¶¶ 91 – 94).  If he means by this to assert that he was targeted for an audit and reclassification due to his race or gender and that, as a result of the audit, he did not receive a pay increase as large as his fellow employees thereby resulting in wage discrimination, the claim fails for the reasons explained above.  Mr. Lunon fails to establish a *prima facie* case of racial or gender discrimination.  Even if he were able to establish a *prima facie* case, defendants offer a legitimate, nondiscriminatory reason for their action, and Mr. Lunon fails to demonstrate that defendants' asserted reason is pretext.  The Court acknowledges that Mr. Lunon claims that Ms. Blanchett told him that Ms. Finne and Ms. White "were fixated on [his] promotion and clandestinely 'fixed' his audit in order to reverse his promotion" (*Id.*), but Mr. Lunon offers no record evidence giving any indication that Ms. Finne and Ms. White sought to reclassify his position *because of his race or his gender*.  Further, even though he points to Ms. Lax, Ms. Garoutte, and Ms. Light, he fails to satisfy the rigorous requirements for comparators at the pretext stage.  *See Edwards*, 860 F.3d at 1126 (requiring, at the pretext stage, comparators who are "'similarly situated in all relevant respects[,]'" meaning the comparators "'must have dealt with

the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'") (internal citations omitted); *Johnson*, 769 F.3d at 613 (same).

For these reasons, the Court grants defendants' motion for summary judgment on these claims.

## IV.     Conclusion

The Court grants defendants' motion for summary judgment (Dkt. No. 37).  The Court denies defendants' partial motion to strike as moot (Dkt. No. 34).  Mr. Lunon's claims are dismissed with prejudice.

So ordered this 11th day of September, 2017.

Kristine G. Baker
United States District Judge